UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARITZA FELICIANO, *o/b/o D.F.*,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

**DECISION AND ORDER**

1:18-CV-00502 EAW

# **INTRODUCTION**

Represented by counsel, Plaintiff Maritza Feliciano ("Plaintiff") brings this action on behalf of D.F., a minor child, pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 15; Dkt. 20). For the reasons discussed below, the Commissioner's motion (Dkt. 20) is granted and Plaintiff's motion (Dkt. 15) is denied.

## BACKGROUND

On September 12, 2014, Plaintiff protectively filed an application for SSI on behalf of D.F., a child under the age of 18. (Dkt. 17 at 90, 112).[1] Plaintiff alleged D.F.'s disability began on December 23, 2011, due to a learning disability, attention deficit hyperactivity disorder, and oppositional defiant disorder. (*Id.* at 90, 113). Plaintiff's application was initially denied on March 3, 2015. (*Id.* at 90, 128-33). On May 8, 2017, a video hearing was held before administrative law judge ("ALJ") William M. Manico. (*Id.* at 49-74, 90). Plaintiff and D.F. appeared in Buffalo, New York, and the ALJ presided over the hearing from Alexandria, Virginia. (*Id.*). On June 8, 2017, the ALJ issued an unfavorable decision. (*Id.* at 84-107). Plaintiff requested Appeals Council review; her request was denied on March 1, 2018, making the ALJ's determination the Commissioner's final decision. (*Id.* at 75-78). This action followed.

## LEGAL STANDARD

### I.  District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is

---

[1]  When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.     Disability Determination

To qualify as disabled under the Act, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). An ALJ follows a three-step sequential evaluation to determine whether a child is entitled to SSI benefits. *Encarnacion ex rel. George v. Astrue*, 568 F.3d 72, 75 (2d Cir. 2009). "First, the child must not be engaged in 'substantial gainful activity.' Second, the child 'must have a medically determinable impairment(s)' that is 'severe' in that it causes 'more than minimal functional limitations.' Third, the child's impairment or

combination of impairments must medically or functionally equal an impairment listed in an appendix to the regulations." *Id.* (quoting 20 C.F.R. § 416.924).

The limitations caused by a child's severe impairment are evaluated pursuant to six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself, and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1). "For a child's impairment to functionally equal a listed impairment, the impairment must 'result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.'" *Encarnacion*, 568 F.3d at 75 (quoting 20 C.F.R. § 416.926a(a)). "A marked limitation is more than moderate but less than extreme and interferes seriously with a child's ability to independently initiate, sustain, or complete activities. An extreme limitation is more than marked and interferes very seriously with a child's ability to independently initiate, sustain, or complete activities." *Id.* (internal quotations and citations omitted).

## DISCUSSION

### I. The ALJ's Decision

In determining whether D.F. was disabled, the ALJ applied the three-step sequential evaluation set forth in 20 C.F.R. § 416.924. Initially, the ALJ determined that D.F. was born on November 5, 2001, and therefore was a school-age child on September 12, 2014, the date the application was filed. (Dkt. 17 at 93). At step one, the ALJ determined that D.F. had not engaged in substantial gainful activity since September 12, 2014, the application date. (*Id.*).

At step two, the ALJ found that D.F. suffered from the following severe impairments: attention deficit hyperactivity disorder ("ADHD"); oppositional defiance disorder; anxiety; and borderline intellectual functioning. (*Id.*). The ALJ further found that D.F.'s medically determinable impairment of asthma was non-severe. (*Id*. 93-94).

At step three, the ALJ found that D.F. did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*. at 94). The ALJ particularly considered the criteria of Listings 112.05, 112.06, and 112.11. (*Id.*). Similarly, the ALJ found that D.F. did not have an impairment or combination of impairments that functionally equaled the severity of the Listings. (*Id.*). In making this determination, the ALJ considered D.F.'s functioning in each of the above-mentioned six domains and concluded that D.F. had no limitation in the areas of moving about and manipulating objects, caring for herself, and health and physical well-being, and less than a marked limitation in the areas of acquiring and using information, attending and completing tasks, and interacting and relating with others. (*Id*. at 94-106). Accordingly, the ALJ found that D.F. was not disabled as defined in the Act. (*Id.* at 106-07).

II.     **The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error**

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that (1) opinion evidence submitted by Brittany Horan, LMHC, D.F.'s therapist, supports the conclusion that D.F. is disabled, and (2) the Appeals Council failed to consider new and

material evidence. (Dkt. 15-1 at 4). The Court has considered each of these arguments and, for the reasons discussed below, finds them without merit.

### A. Assessment of Ms. Horan's Opinion

Plaintiff's first argument is that the RFC is not supported by substantial evidence because the opinion of Ms. Horan supports the conclusion that D.F. is disabled. (Dkt. 15-1 at 17). Plaintiff contends that the ALJ's error requires remand of the case for calculation and payment of benefits, as "the record is fully developed and further administrative proceedings would serve no useful purpose." (*Id*. at 27).

In assessing a disability claim, an ALJ must consider and weigh the various medical opinions of record. Pursuant to the Commissioner's regulations:

> the ALJ must consider various factors in deciding how much weight to give to any medical opinion in the record, regardless of its source, including: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the . . . physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Pike v. Colvin*, No. 14-CV-159-JTC, 2015 WL 1280484, at *5 (W.D.N.Y. Mar. 20, 2015) (quotation and alterations omitted). As a licensed mental health counselor, Ms. Horan is not an acceptable medical source under the regulations. Rather, Ms. Horan is an "other source," and therefore her opinion is not entitled to controlling weight. *See Healy o/b/o TAH v. Commissioner*, No. 18-CV-1050L, 2020 WL 419358, at *4 (W.D.N.Y. Jan. 27, 2020) ("The ALJ correctly observed that a licensed mental health counselor is not an 'acceptable medical source' under the regulations, but is instead an 'other source,' and thus not presumptively entitled to controlling weight.") (citations omitted). However, "other

source" evidence, including evidence offered by licensed mental health counselors, is "material on the issues of 'the severity of [plaintiff's] impairment(s) and how it affects [her] ability to work.'" *Tanner v. Colvin*, No. 5:10-V-1308(NAM), 2014 WL 2215762, at *5 (N.D.N.Y. May 28, 2014) (quoting 20 C.F.R. § 416.913(d)) (alterations in original). An ALJ may not disregard opinion evidence from an "other source" solely because it was not authored by an acceptable medical source. *See Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010) (holding that ALJ erred in disregarding opinion of social worker simply because it was the opinion of an "other source," and "not on account of its content or whether it conformed with the other evidence in the record").

Ms. Horan completed a medical source statement on May 3, 2017. (Dkt. 17 at 645-49). Ms. Horan began treating D.F. in December 2016, and had treated D.F. on approximately six occasions at the time she completed the medical source statement. (*Id*. at 647). Ms. Horan opined that D.F. had a "less than marked" limitation for acquiring and using information, and "marked" limitations for attending and completing tasks, interacting and relating with others, caring for herself, and health and physical well-being. (*Id*. at 646-47). D.F. had "no limitation" in her ability to move about and manipulate objects. (*Id*. at 646). Ms. Horan explained that D.F. "has difficulty with impulse control, has history of verbal and physical aggression at home and at school, history of behavior issues leading to a diagnosis of Oppositional Defiant Disorder. [D.F.] has difficulty focusing, completing tasks in school, diagnosed as ADHD. [D.F.] has difficulty sleeping, has anxiety, racing thoughts, and has experienced occasional panic attacks." (*Id*. at 648). Ms. Horan further noted that D.F. had inconsistent attendance at counseling, was prescribed medication for

her symptoms, and that D.F. had "difficulty managing her mood swings and emotions, is impulsive and has poor judgment and problem solving skills." (*Id*. at 648-49). Because Ms. Horan opined that D.F. had marked limitations in at least two domains of functioning, had the ALJ given Ms. Horan's opinion "controlling weight," he would have found D.F. disabled. However, as explained below, the ALJ properly considered Ms. Horan's opinion, and determined that it was entitled to only "little weight."

The ALJ discussed Ms. Horan's May 3, 2017 medical source statement. (*Id*. at 96). The ALJ explained that she gave Ms. Horan's opinion "little weight," because:

> [T]here is little to suggest that [Ms. Horan] is an acceptable medical source under our rules. However, assuming arguendo, that Ms. Horan is an acceptable medical source, I would still afford her opinion little weight. As discussed, Ms. Horan provided a medical source statement, wherein she opined that the claimant's ability to care for herself, relate to others, attend and complete tasks and manage her physical well-being was markedly limited. Based on this evidence, I am unable to give Ms. Horan's opinion more than little weight. The claimant's treatment records as a whole do not reflect the severity of Ms. Horan's determinations, and in some cases neither do her own notes. In fact, according to her March 2017 treatment notes, Ms. Horan noted that the claimant's mood was 'good' and that she was oriented and alert. She also noted that the claimant's speech was clear and coherent, and that her attitude was cooperative. Moreover, the claimant's concentration was good and she presented as neat and cleanly dressed. At the conclusion of the evaluation, Ms. Horan suggested that the claimant was stable and she recommended no change to her treatment plan. Aside from her March evaluation, there do not appear to be any additional notes from Ms. Horan. Therefore, it is difficult to ascertain how she reached such extreme opinions. Given the lack of support for Ms. Horan's opinion, I find that her opinion is entitled to little weight.

(*Id.* at 98-99) (citations omitted). It is clear from the ALJ's discussion and evaluation of Ms. Horan's opinion that he considered the above-mentioned factors, including that Ms. Horan was D.F.'s mental health counselor, the consistency of Ms. Horan's opinion with D.F.'s medical record and Ms. Horan's own notes, and the evidence in support of Ms.

Horan's opinion. *See Piatt v. Colvin*, 80 F. Supp. 3d 480, 493 (W.D.N.Y. 2015) (the Commissioner is free to decide that the opinions of "other sources" are entitled to little or no weight, so long as those decisions are explained) (citations omitted). Further, the ALJ's reasons for giving Ms. Horan's opinion only little weight, which mainly focus on the lack of support for her opinion in the medical record, were proper. *See Zimpfer v. Commissioner*, No. 1:18-cv-1512-DB, 2020 WL 32938, at *8 (W.D.N.Y. Jan. 2, 2020) (ALJ properly gave only little weight to nurse practitioner's opinion because it was inconsistent with the evidence as a whole; the ALJ cited specific treatment notes supporting his conclusion, and "[h]e need to have done nothing more."). The Court has reviewed D.F.'s medical records. Although at times the records note that D.F. was uncooperative and showed poor judgment, the Court agrees with the ALJ's conclusion that the record, as a whole, does not support the severity of Ms. Horan's determinations. (*See, e.g.*, Dkt. 17 at 304 (mostly normal mental status examination on July 3, 2014, during initial psychiatric evaluation); *id*. at 355, 360-61 (normal mental status examination on February 20, 2015, during consultative examination); *id*. at 394 (at medical office visit in January 2017, D.F. was "alert and oriented x 3 with no impairment of recent or remote memory, normal attention span and ability to concentrate, able to name objects and repeat phrases."); *id*. at 546 (normal mental status examination on April 28, 2015); *id*. at 169 (normal mental status examination with Ms. Horan in March 2017)).

The ALJ also considered opinion evidence offered by other medical professionals, including the opinion of Christine Ransom, Ph.D. (*See* Dkt. 17 at 95). Unlike Ms. Horan, Dr. Ransom is an acceptable medical source. The ALJ discussed Dr. Ransom's opinion

that D.F.'s impairments would not "significantly interfere with [her] ability to function on a daily basis," and that D.F. had only mild difficulty attending to, following and completing age appropriate tasks. (*Id.*). The ALJ also explained that Dr. Ransom found that D.F.'s ability to adequately maintain social behavior, respond to changes in her environment, learn in accordance to cognitive functioning, ask questions, request assistance in an age-appropriate manner, be aware of danger, take needed precautions, and interact adequately with peers and adults, was only mildly impaired. (*Id.*; *see also id.* at 353-58). The ALJ afforded Dr. Ransom's opinion "partial weight," because "[w]hile the evidence as a whole supports Dr. Ransom's findings that the claimant has no marked restrictions in any area . . . the evidence suggests that she has more than only mild restrictions in various areas." (*Id.* at 98). The ALJ's decision to give more weight to the limitations assessed by Dr. Ransom was proper. *See Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (assessments by non-acceptable medical sources "do not warrant the same deference as a physician's opinion.").

Plaintiff contends that the ALJ "selectively analyzed the file, impermissibly focusing on the parts of the record that would support a finding of non-disability." (Dkt. 15-1 at 23). For example, Plaintiff contends that the ALJ was "disingenuous" in discussing Ms. Horan's mental status examinations of D.F., because he failed to mention Ms. Horan's January 2017 findings that D.F. exhibited an anxious mood with fair concentration, Ms. Horan's concern that D.F. had access to knives, and Ms. Horan's assessment of D.F.'s GAF score. (*Id.* at 21-22). Plaintiff further argues that the ALJ failed to discuss GAF scores

and mental status examinations performed by other sources in the record, including Dr. Dewey, nurse practitioner McKenzie, and therapist Hayes. (*Id.* at 22).

The ALJ "is not required to reconcile explicitly every conflicting shred of medical testimony. Nor is the ALJ required to mention or discuss every single piece of evidence in the record." *Zabala v. Astrue*, No. 05 Civ. 4483(WHP), 2008 WL 136356, at *4 (S.D.N.Y. Jan. 14, 2008) (internal quotations and citations omitted), *aff'd*, 595 F.3d 402 (2d Cir. 2010); *see also Rossi v. Commissioner*, No. 5:10-CV-97(TJM/ATB), 2010 WL 5313771, at *11 (N.D.N.Y. Dec. 2, 2010) ("The ALJ must set forth the essential considerations upon which the decision was based with sufficient specificity so as to enable the reviewing court to determine whether the disability determination was supported by substantial evidence. However, an ALJ is not required to explicitly set forth and analyze every piece of conflicting evidence in the record."), *adopted*, 2010 WL 5325633 (N.D.N.Y. Dec. 20, 2010). In assessing Ms. Horan's opinion, the ALJ explained that D.F.'s treatment records "as a whole" did not reflect the severity of Ms. Horan's assessed limitations. The ALJ cited to specific evidence in the record, including Ms. Horan's March 2017 treatment notes, presumably due to the proximity of the March 2017 notes and May 2017 medical source statement. The fact that the ALJ did not explicitly discuss Ms. Horan's January 2017 observations regarding Plaintiff's anxious mood and fair concentration, concern regarding D.F.'s access to knives, and GAF score, does not require remand. *See, e.g., Haddad v. Commissioner*, No. 18-CV-0929-MJR, 2020 WL 597382, at *5 (W.D.N.Y. Feb. 7, 2020) ("[T]he fact that the ALJ did not mention the GAF scores does not mean that he did not consider them, particularly since the ALJ discussed NP Magill's records, which contained

the scores. Further, courts in this Circuit have routinely held that the absence of the GAF score from the ALJ's discussion, on its own, does not constitute reversible error.") (internal citations omitted).

It is clear from the written determination that the ALJ reviewed and considered Plaintiff's medical records, including the records from Ms. Horan, as he made specific reference to them. Indeed, the ALJ referred to Plaintiff's mental health evaluations and treatment notes throughout the written determination. (*See, e.g.*, Dkt. 17 at 98 (discussing treatment note stating that D.F.'s insight could be considered poor, she was unable to recognize the consequences of her behavior, or demonstrative positive behavioral change); 98-99 (discussing Ms. Horan's March 2017 mental status evaluation); *id.* at 101, 103 (discussing Dr. Ransom's evaluation of D.F.); *id.* at 96, 100, 101-02, 103, 105 (discussing D.F.'s medical and educational records)). Despite the fact that Ms. Horan is a non-acceptable medical source and her opinion is not entitled to any special deference, the ALJ discussed her opinion in detail, and cited to specific evidence supporting his decision to afford the opinion only little weight. The Court can discern from the written determination how the ALJ arrived at his assessment of Ms. Horan's opinion. An ALJ is not required to discuss each and every treatment note when evaluating opinion evidence offered by a non-acceptable medical source, and his failure to do so does not require remand.

Plaintiff raises several additional issues relating to the ALJ's assessment of Ms. Horan's opinion. For example, Plaintiff attacks the ALJ's assessment of D.F.'s credibility. (*See* Dkt. 15-1 at 23 ("The Commissioner will likely point to three core areas the ALJ focused on in his articulation as to why he did not find D.F. to be credible.")). The ALJ,

the scores. Further, courts in this Circuit have routinely held that the absence of the GAF score from the ALJ's discussion, on its own, does not constitute reversible error.") (internal citations omitted).

It is clear from the written determination that the ALJ reviewed and considered Plaintiff's medical records, including the records from Ms. Horan, as he made specific reference to them. Indeed, the ALJ referred to Plaintiff's mental health evaluations and treatment notes throughout the written determination. (*See, e.g.*, Dkt. 17 at 98 (discussing treatment note stating that D.F.'s insight could be considered poor, she was unable to recognize the consequences of her behavior, or demonstrative positive behavioral change); 98-99 (discussing Ms. Horan's March 2017 mental status evaluation); *id.* at 101, 103 (discussing Dr. Ransom's evaluation of D.F.); *id.* at 96, 100, 101-02, 103, 105 (discussing D.F.'s medical and educational records)). Despite the fact that Ms. Horan is a non-acceptable medical source and her opinion is not entitled to any special deference, the ALJ discussed her opinion in detail, and cited to specific evidence supporting his decision to afford the opinion only little weight. The Court can discern from the written determination how the ALJ arrived at his assessment of Ms. Horan's opinion. An ALJ is not required to discuss each and every treatment note when evaluating opinion evidence offered by a non-acceptable medical source, and his failure to do so does not require remand.

Plaintiff raises several additional issues relating to the ALJ's assessment of Ms. Horan's opinion. For example, Plaintiff attacks the ALJ's assessment of D.F.'s credibility. (*See* Dkt. 15-1 at 23 ("The Commissioner will likely point to three core areas the ALJ focused on in his articulation as to why he did not find D.F. to be credible.")). The ALJ,

who has the "opportunity to observe witnesses' demeanor, candor, fairness, intelligence and manner of testifying," is "best-positioned to make accurate credibility determinations." *Whiting v. Astrue*, No. CIV.A. 1:12-274, 2013 WL 427171, at *6 (N.D.N.Y. Jan. 15, 2013), *adopted*, 2013 WL 427166 (N.D.N.Y. Feb. 4, 2013). As such, "credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." *Perez v. Barnhart*, 440 F. Supp. 2d 229, 235 (W.D.N.Y. 2006) (quotation omitted).

In assessing the credibility of a claimant's subjective complaints, the Commissioner's regulations require ALJs to employ a two-step inquiry. *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010). "First, the ALJ must determine whether the claimant suffers from a 'medically determinable impairment[ ] that could reasonably be expected to produce'" her symptoms. *Id.* (quoting 20 C.F.R. § 404.1529(c)(1)). "Second, the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Id*.

Here, the ALJ employed the two-step inquiry. At step one, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms[.]" (Dkt. 17 at 95). Thereafter, at step two, the ALJ explained that D.F.'s "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. . . ." (*Id*.). The ALJ explained this finding by referring to specific evidence in the

record, including: while D.F. received treatment to address her mental impairments, the level of treatment failed to show that she had marked limitations in any two domains of functioning; D.F.'s medications, when taken in compliance with her medication regimen, controlled her symptoms; reports from D.F.'s school suggested that she was intelligent, but failed to apply herself; the two acceptable medical sources in the record – Dr. Ransom and Dr. Meyer – opined that D.F. did not have marked limitations in any two domain areas; and D.F. was often non-compliant in taking her medications and in attending therapy sessions. (*See id.* at 95-98).

Regarding the ALJ's discussion of D.F.'s non-compliance with her treatment regimen, Plaintiff again points to evidence she contends that the ALJ did not consider, including treatment notes from the Neighborhood Health Clinic, which stated that D.F. had moderate symptoms that were worsening, a report from D.F.'s mother that she was having problems in school and with her medication, the fact that D.F.'s mother has bipolar disorder, and that D.F.'s poor judgment and external factors may have played a role in her non-compliance. (*See* Dkt. 15-1 at 23-25). First, Plaintiff's non-compliance with her treatment regimen was only one of various reasons the ALJ found that D.F.'s subjective complaints were not credible. Further, it is clear from the written determination that the ALJ considered various factors that could have affected D.F.'s non-compliance. (*See, e.g.*, Dkt. 17 at 95 (discussing reports that D.F. was inattentive and had a short attention span); *id.* (discussing D.F.'s refusal to meet with her counselor); *id.* at 96 (discussing reports that D.F. had difficulty managing her moods); *id.* (noting D.F.'s lack of structure at home); *id.* (noting D.F.'s refusal to take her medication, because she had concerns about its

effectiveness); *id*. at 97 (discussing Plaintiff's testimony that she had problems getting D.F. to listen to her); *id*. (discussing D.F.'s testimony that she did not take her medication because she did not like the way it made her feel, and because she was "not crazy.")). In other words, the ALJ did not ignore evidence relevant to D.F.'s credibility; rather, he found that despite these facts, D.F.'s complaints regarding the degree of her limitations were not credible.

Plaintiff also contends that the ALJ did not properly assess a questionnaire completed by Ms. Kisiel, one of D.F.'s teachers. (Dkt. 15-1 at 26). The ALJ referenced the teacher questionnaire completed by Ms. Kisiel (*see* Dkt. 17 at 255-63) in conjunction with her evaluation of the six domains of functioning (*see id*. at 100-05). Plaintiff argues that the ALJ failed to mention that Ms. Kisiel was D.F.'s homeroom teacher and did not evaluate her in an academic classroom, and Ms. Kisiel's opinions regarding D.F.'s functioning are belied by D.F.'s academic and disciplinary record. (*See* Dkt. 15-1 at 26-27).

The ALJ's reliance on the teacher questionnaire completed by Ms. Kisiel does not require remand. First, the ALJ relied on several types of evidence in assessing D.F.'s ability to perform in each of the six functional domains, not only Ms. Kisiel's questionnaire. The ALJ considered additional evidence, including D.F.'s IQ scores, mental health evaluations, medical and education records, and reports from her mother. (*See* Dkt. 17 at 100-06). *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."). Second, Ms. Kisiel did not opine that D.F. was an exemplary

student; rather, based on her observations of D.F., Ms. Kisiel found that D.F. had problems in several of the functional domains, but she was also "capable of doing her work," and "[m]any times she chooses to socialize than pay attention to lessons being taught." (Dkt. 17 at 257-61). The fact that D.F. obtained less-than-average grades and was subject to frequent discipline is not necessarily at odds with Ms. Kisiel's assessment.

In sum, the ALJ's written determination is supported by substantial evidence. As explained above, it is not this Court's function to re-weigh the evidence considered by the ALJ. *See Wright v. Colvin*, 99 F. Supp. 3d 328, 332 (E.D.N.Y. 2015) ("It is the function of the SSA, not of the federal district court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.'") (quoting *Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir. 1983)). Rather, it is the Court's duty to determine whether the ALJ's decision is supported by substantial evidence. Here, the ALJ issued an 18-page, well-reasoned decision, addressing evidence weighing both in favor of and against a finding of disability. The Court can discern from the written determination how the ALJ arrived at his conclusions regarding D.F.'s limitations in the six functional areas. Remand is not required on the basis that Ms. Horan's opinion supports a disability finding.

### B. Evidence Submitted to the Appeals Council

Plaintiff next argues that the Appeals Council failed to consider two teacher questionnaires completed by Holly Hogg and Katherine Derrico. (Dkt. 15-1 at 28). The questionnaires were completed on May 4, 2017, and May 5, 2017, prior to the May 8, 2017 administrative hearing. (*Id.*). Plaintiff explains that she was unable to submit these

questionnaires before the hearing due to the "Agency's so-called 'five day rule'" which "requires a claimant to submit or notify the ALJ of any evidence at least five business days prior to the scheduled administrative hearing." (*Id.* at 29; *see also* 20 C.F.R. § 416.1435(a)). Instead, Plaintiff submitted the questionnaires to the Appeals Council via fax on August 23, 2019.[2] (Dkt.15-1 at 30; *see also* Dkt. 17 at 12-34). Plaintiff contends that the Appeals Council's failure to consider this evidence requires remand to the Commissioner, so that he may consider the teacher questionnaires. (Dkt. 15-1 at 30). In response, Defendant argues that the ALJ gave Plaintiff an opportunity to submit additional evidence following the administrative hearing, and Plaintiff fails to explain why she waited until August 23, 2017 to submit this evidence. (Dkt. 20-1 at 24-25).

At the administrative hearing, Plaintiff's counsel informed the ALJ of "some additional records from the Buffalo Public Schools." (Dkt. 17 at 61). Plaintiff's counsel explained that he did not have those records because "I don't like to show up at the hearing with – and now, especially in light of the new rule." (*Id.*). Plaintiff's counsel also explained that he had difficulty getting in touch with Plaintiff and that some of the new records would demonstrate that D.F. was diagnosed with anxiety and prescribed medication. (*Id.*). Although he could have rejected this evidence because it was not noticed or submitted in compliance with the five-day rule, the ALJ instructed Plaintiff's counsel to "submit [the additional records] after the hearing[.]" (*Id.*). Plaintiff's counsel submitted

---

[2] The Court notes that the timestamp on the questionnaire submitted by Ms. Derrico appears to show that it was faxed on December 4, 2017. (*See* Dkt. 17 at 27-34). Whether the Appeals Council received this evidence in August or December 2017 is irrelevant to the Court's analysis.

- 17 -

some additional evidence on May 16, 2017 (*see id.* at 650-74), but the teacher questionnaires were not included in these records. Plaintiff's counsel never submitted the teacher questionnaires to the ALJ, who rendered his decision in June 2017. Thereafter, almost four months after the administrative hearing, Plaintiff faxed the teacher questionnaires to the Appeals Council on August 23, 2017. On March 1, 2018, in its decision denying Plaintiff's request for review of the ALJ's determination, the Appeals Council discussed the additional evidence submitted by Plaintiff:

> You also submitted a Teacher Questionnaire from Holly Hogg, dated May 4, 2017 (15 Pages) and a Teacher Questionnaire [from] Katherine Derrico, dated May 5, 2017 (8 Pages). *We find that you did not have good cause for why you missed informing us about or submitting this evidence earlier. We did not consider this evidence.*

(*Id.* at 76) (emphasis added).

"On May 1, 2017, the Appeals Council changed the rules it applies when considering whether to review a claimant's case. Specifically, the Appeals Council now requires the claimant to show 'good cause' for failing to submit additional evidence to the SSA at least five business days before his hearing." *Pennetta v. Commissioner*, No. 18-CV-6093-FPG, 2019 WL 156263, at *3 n.4 (W.D.N.Y. Jan. 10, 2019). *See also* 20 C.F.R. § 416.1470(b) ("[I]n reviewing decisions based on an application for benefits, the Appeals Council will only consider additional evidence under paragraph (a)(5) of this section if you show good cause for not informing us about or submitting the evidence. . . ."). Accordingly, "[t]he Appeals Council will review a denial of benefits if it receives additional evidence that is new, material, and relates to the period on or before the ALJ's decision, and there is a reasonable probability that it would change the outcome of the

- 18 -

decision, *provided that the claimant can show good cause for not earlier providing the evidence to the ALJ*." *Fitscher v. Commissioner*, No. 18-CV-848S, 2019 WL 5884614, at *3 (W.D.N.Y. Nov. 12, 2019) (internal quotations and citations omitted) (emphasis added). The Appeals Council explained that it declined to consider the teacher questionnaires because it found that Plaintiff did not satisfy the good cause requirement, *i.e.*, because Plaintiff did not have good cause for why she did not submit the questionnaires at an earlier date.

Although Plaintiff has explained why she did not submit the teacher questionnaires prior to the administrative hearing (*i.e.*, due to the five-day rule), she does not explain why she failed to submit the questionnaires after the hearing, despite the fact that they were complete at that time and the ALJ specifically directed Plaintiff's counsel to submit them following the hearing. Plaintiff's counsel apparently understood this directive, because he submitted some additional evidence following the hearing. However, the teacher questionnaires were not included in this submission. Plaintiff had almost one month between the date of the hearing and the date of the ALJ's determination to submit the teacher questionnaires, but she failed to do so in a timely manner, and she has failed to explain why she has good cause for her failure to submit this evidence. Plaintiff may not hold back evidence that was available at the time the ALJ made his determination, only to present it to the Appeals Council at a later date. This is especially true in the social security disability context, which employs non-adversarial, fact-finding proceedings. Absent an adequate explanation from Plaintiff as to why she did not submit the teacher questionnaires to the ALJ following the administrative hearing, the Court cannot find that the Appeals

Council erred by rejecting the teacher questionnaires. *See Reynolds v. Commissioner*, No. 12-CV-1167S, 2019 WL 2020999, at *4 (W.D.N.Y. May 8, 2019) (Appeals Council's decision not to consider additional evidence was proper, where the plaintiff "moved for and was granted a 30-day extension of time to file exceptions to the ALJ's decision with the Appeals Council," but "failed to thereafter make any timely submissions."); *Baker v. Commissioner*, No. 17-CV-1267-MJR, 2019 WL 1986517, at *7 (W.D.N.Y. May 6, 2019) ("Absent any argument from Baker that the Appeals Council erred in finding she lacked good cause for not submitting the new evidence earlier than she did, Baker's objection to the Appeals Council's refusal to consider this evidence in denying her request for review is without merit."). Remand is not required on this basis.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 20) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 15) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: April 10, 2020
      Rochester, New York